(33 Misc. Rep. 100.)

DEPARTMENT OF HEALTH OF CITY OF NEW YORK v. WENDEL.

(Supreme Court, Appellate Term. November 27, 1900.)

LANDLORD AND TENANT—LEASE FOR TERM OF YEARS—FAILURE TO PROVIDE RECEPTACLES FOR GARBAGE—PENALTY—LIABILITY OF LANDLORD.
    Where premises in New York City had been demised for a term of years, and were in the actual possession of the tenant, the landlord was not liable for the penalty imposed by the New York City charter (section 1322), for failure to provide proper receptacles to receive garbage.
    Beekman, P. J., dissenting.

Appeal from municipal court, borough of Manhattan, Seventh district.

Action by the department of health of the city of New York against John D. Wendel. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before BEEKMAN, P. J., and GIEGERICH and O'GORMAN, JJ.

Thompson & Koss, for appellant.
John Whalen, Corp. Counsel (Henry Steinert, of counsel), for respondent.

O'GORMAN, J. The defendant, the owner of the building in question, has been out of possession for more than 11 years, and his lessee under a 21-year lease was in actual possession when the penalty accrued. All the work ordered by the department of health, including the furnishing of suitable ash and garbage receptacles, related to matters necessarily incident to the use of the premises; and the test as to liability for a noncompliance is, who is in control of the prop-

67 N.Y.S.—9

erty? who suffered the offensive condition to exist? It is quite clear that the lessee or occupant is the offender. It is his use of the premises that may menace the public health, and it is obviously within his power to correct the wrong or violation which he caused. The furnishing of ash and garbage receptacles cannot be regarded as a part of the permanent equipment or construction of the building. These receptacles are the ordinary portable ash cans, which must be replaced at frequent intervals; and the owner of the fee out of possession cannot be required to visit his premises from time to time to inspect articles and utensils which are constantly in use by his lessee. While it is true that the requirement touching these receptacles in section 1322 of the charter is associated with other provisions relating to the permanent construction and equipment of the building, yet in section 1312 the requirement as to furnishing "proper and suitable conveniences and receptacles for receiving garbage and other refuse matters" is associated with the subjects manifestly incidental to the actual use of the premises,—as the prevention of the storage of combustible material, the keeping of animals, or the storage of straw or feed, except by special permit. Moreover, the lessee expressly covenants to make all repairs, and to comply with all orders of the department of health, respecting the premises. There can be no doubt that, as between the owner and the lessee, the latter was bound to obey the order of the board of health requiring the furnishing of these receptacles. If that was the lessee's duty with respect to his lessor, it also became his duty with respect to third persons. This is the rule universally applied in actions brought by third persons for injuries sustained upon demised premises, and that principle may well be invoked in this case. Indeed, that was the principle upon which the court relied in the case of Mayor, etc., v. Corlies, 2 Sandf. 301, cited with approval in Ditchett v. Railroad Co., 67 N. Y. 425, where, in a case similar to the one before us, the court held that, "where premises have been demised for a term of years, and are in the actual occupation of the tenant, when a penalty is incurred upon such premises for a violation of an ordinance of a municipal corporation the tenant is liable for the penalty, and not the landlord." The judgment is without evidence to support it, and should be reversed.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

BEEKMAN, P. J. (dissenting). The defendant is, and for many years has been, the owner of a tenement house in the city of New York. On the 13th day of July, 1899, the board of health issued an order directed to the defendant requiring that "the dirty paper be removed from the walls and ceilings of the halls and all whitewashed portions thereof, and the walls and ceiling of the cellar be thoroughly cleaned and whitewashed; that the cellar and the yard be thoroughly cleaned and disinfected; that each sink be provided with a properly adjusted new metal flashing; that suitable and sufficient receptacles be provided for holding garbage without leakage, and separate metal or metal-lined receptacles for ashes; ashes and garbage to

be kept in separate receptacles." The defendant refused to obey the order, and this action has been brought to recover the sum of $200, the penalty for which the statute provides at the rate of $10 for each day that the offense shall continue. Section 1322, c. 378, Laws 1897. The pleadings were oral, the answer of the defendant being in the formation of a general denial. Upon the trial the propriety and reasonableness of the requirements of the board of health in so far as they related to the condition of the premises in question were not contested. The defendant rested his defense solely on the ground that at the time said order was issued the entire premises were under lease to tenants who had covenanted to comply with all orders and requirements of the board of health with respect to the building at their own expense. The lease referred to, which was put in evidence, bears date the 22d day of June, 1888, and was made by the defendant to Anton Ehrmann and Maxamiliana Ehrmann, his wife, for the term of 21 years from May 1, 1888. The lessees covenanted to pay the rent reserved, the taxes, assessments, and Croton water rents; and, further, as above stated, that they would properly execute and fulfill "all ordinances of the city corporation applicable to said premises, and all orders and requirements of the metropolitan board of health or health department and the police department for the correction, prevention, and abatement of nuisances or other grievances in, upon, or connected with said premises during the continuance of this lease, at their own expense, without any cost or trouble to the party of the first part or his assigns." No other proof having been offered by the defendant, the cause was submitted to the justice for decision, who thereupon rendered judgment in favor of the plaintiff. From this judgment the defendant has appealed to this court, his counsel stating in his brief that the sole question which he wished to submit was, "Does the naked fact of ownership make this defendant liable, when the evidence is undisputed that he is out of possession and control by a twenty-one year lease?" The statutory provisions applicable to the case at bar are found in title 7 of chapter 19 of the city charter (chapter 378, Laws 1897). This chapter deals with the department of health, its powers and responsibilities, under eight titles, each treating of some special subject. Title 7 relates to "Tenement and Lodging Houses," and includes sections 1304 to 1325, both inclusive. Section 1310 provides, among other things, that:

"The owner or lessee of any tenement house or part thereof shall thoroughly cleanse all the rooms, passages, stairs, floors, windows, doors, walls, ceilings, privies, cesspools and drains of the house or part of the house of which he is the owner or lessee to the satisfaction of the department of health so often as he shall be required by or in accordance with any order of the board of health and any regulation or ordinance of said department, and shall well and sufficiently to the satisfaction of the said health department whitewash the walls and ceilings thereof once in every year."

Sections 1312 and 1320 require that every tenement house shall be furnished with proper receptacles for garbage, ashes, and other refuse matter. The order of the board in the case before us was apparently made in pursuance of these sections. Section 1322 provides for the infliction of a penalty for any violation of the provisions of title 7 in the following words:

"Every owner or other person violating any provision of this title shall be guilty of a misdemeanor punishable by a fine of not less than ten dollars or more than one hundred dollars, or by imprisonment for not more than ten days, for each and every day that such violation shall continue, or by both such fine and imprisonment in the discretion of the court. He shall also be liable to pay a penalty of ten dollars for each day that such offence shall continue. Such penalty may be sued for and recovered by the department of health in any civil tribunal of said city, and when recovered shall be paid over to the chamberlain. In every proceeding for a violation of this title and in every such action for a penalty it shall be the duty of the owner of the house to prove the date of its erection or conversion to its existing use if that fact shall become material, and the owner shall be, prima facie, the person liable to pay such penalty, and after him the person who is the lessee of the whole house in preference to the tenant or lessee of a part thereof. In any such action the owner, lessee or occupant or any two of them may be made defendants, and judgment may be given against the one or more shown to be liable as if he or they were the sole defendant or defendants."

It will be observed that, while the owner is made prima facie liable for the penalty, the question of his actual liability is still open to inquiry, and must be determined, not as a mere matter of discretion or arbitrary action on the part of the court, but upon the solution of the question whether, in the particular case, the duty of complying with the law alleged to have been violated rested as a matter of law upon the owner or upon the lessee or occupant of the property. It is claimed on the part of the plaintiff that, where the statute in terms requires the performance of certain things by "the owner or lessee," the duty of compliance rests upon each and all of them. In opposition to this view it is contended that such duty depends upon the nature of the things required to be done, and the existing relation of the owner to the property at the time of the alleged violation of the law. I am inclined to adopt the latter view. I think that the above-cited provisions with respect to the enforcement of penalties import that the duty of the owner, in some cases of alleged violations of the statute, and, consequently, his liability for the penalty prescribed, exist only where he is in full possession of the property, and responsible for its management; but that where he has leased the entire premises the duty of compliance in such cases becomes that of the lessee, who is then the one "shown to be liable" for the penalty, and against whom alone judgment should be rendered. Where the owner, as in the present case, has leased the entire property, the exclusive right to the possession of the premises and of every part of the same passes to his lessee. It is the latter, and not the former, who applies the property to the uses of a tenement house. He selects the tenants, and it is he, and not the owner, who stands towards them in the relation of landlord, and bound to the performance of all the duties towards his tenants which rest upon the landlord of such premises. It is he, and not the owner, who is, so to speak, running the house for the purposes of a tenement house, and who should reasonably be held responsible for violations of the law which relate to conditions created by its use. He, rather than the owner, is in a position to check abuses, and to remedy them. The statute should receive a reasonable construction, rather than a harsh and oppressive one, and full effect should be given to all of its provisions. Section 1320 of the statute is, I think,

most persuasive of the construction which should govern.   This section provides, among other things, as follows:

"The owner or lessee of every tenement or lodging house in the city of New York shall keep a light burning in the hallway upon each floor of said house from sunset until ten p. m. throughout the year.   In every tenement house in the city in which there is a hallway or hallways with windows opening from such hallway outside of said house, a light shall be maintained by said owner or lessee in each such hallway between the hours of eight a. m. and ten p. m. of each day unless said hallway shall be otherwise sufficiently lighted."

Is it reasonable to suppose that the legislature intended to cast such a duty as this upon the owner where he has leased the entire premises, which have thus come under the exclusive control of the lessee?   The owner in such a case is not in a position to do an act of this character, which requires daily performance and involves on his part a constant interference with the exclusive control and use of the property to which the lessee is entitled.   Obviously, this provision relates to the use and management of the house for tenement house purposes, and the duty in that regard is, therefore, one which reasonably belongs to him who is in possession of and who is using the same.   A reasonable construction of the section seems to call for the conclusion that the provision which devolves the duty upon the "owner or lessee" imports an obligation resting exclusively upon the lessee where there is a lease, and, where there is no lease, then upon the owner.   The same conclusion logically follows with respect to the import of the words "owner or lessee" as used in section 1310, above quoted, which embraces all of the requirements mentioned in the order of the board of health except the one relating to receptacles for garbage and ashes.   All of these relate to conditions attending the use of the property by one in actual possession of the same, and involve duties which should properly be performed by him.   I am of the opinion, then, that as to all of the directions contained in the order of the health board, except the one relating to receptacles for garbage and ashes, the defendant was not liable for any penalty because of a failure to comply therewith, inasmuch as the duty in that regard rested not upon him, but upon his lessee.

My conclusion, however, is different with respect to the providing of the receptacles above mentioned.   Section 1320 relates, among other things, to receptacles for ashes and other rubbish, and deals, among other things, with certain details which relate to the construction, equipment, and appurtenances of tenement houses.   It requires that every such house shall have chimneys of a certain character; proper conveniences and receptacles for ashes and rubbish; water furnished in sufficient quantity at one or more places on each floor occupied or intended to be occupied by one or more families; and that "all tenement houses shall be provided with a like supply of water by the owners thereof whenever they shall be directed so to do by the board of health."   The section further directs that the floors of the cellars of such houses shall be made water-tight, and the ceilings plastered.   It will thus be seen that the portion of the section above referred to contains requirements which relate to the adaptation of the building to the purposes of a tenement house, and not to

conditions which arise only in the course and by reason of its actual use; and it is a significant fact that no reference is made to the person or persons by whom the duties above referred to are to be performed, except in the single case of the supply of water. It is further noteworthy that in the latter part of the same section, where reference is made to keeping lights burning in the hallways, the duty of so doing, as we have seen, is, in terms, charged upon the "owner or lessee." Thus, within the limits of the section in question, we find evidence of a legislative intention to require the performance by the owner of certain duties in any event, and of certain other duties only where the premises are not in the possession of a lessee. It will also be observed that the requirement with respect to the furnishing of receptacles for ashes and other rubbish is immediately associated with a number of others which I think indisputably relate to duties that are to be performed by the owner in any event, and that under the application of the rule, "Noscitur a sociis," the conclusion should follow that the furnishing of such receptacles was also intended to be a like duty of the owner. Receptacles for garbage are provided for by section 1312. That section reads as follows:

"Every tenement or lodging-house shall have the proper and suitable conveniences or receptacles for receiving garbage and other refuse matters. No tenement or lodging-house or premises, nor any portion thereof, shall be used as a place of storage for any combustible article, or any article dangerous to life or detrimental to health, nor shall any horse, cow, calf, swine, pig, sheep or goat be kept in said house or on the premises thereof. No bakery or place of business in which fat is boiled shall be maintained in any tenement house which is not fireproof, or where the ceiling or side walls of place, where said fat boiling is done, are not made safe by fireproof material around the same, except by permit of and under such conditions as may be prescribed by the fire department."

It is true that the requirement under consideration is in this section associated with various prohibitions relating to the use of tenement houses. I do not think, however, that this circumstance is destructive of the claim that the furnishing of such receptacles properly appertains to the owner. Receptacles, both for ashes and garbage, come under the category of "appurtenances," as that word is used in section 1304 of the statute above mentioned, which, among other things, provides that:

"Every house, building or portion thereof in the city of New York used, occupied, leased or rented for a tenement or lodging house, must conform in its premises to the requirements of this title; and its use and occupation shall be regulated subject to the ordinances of the sanitary code applicable thereto and the orders of the board of health duly made pursuant to its authority, duty and powers conferred and enjoined upon it in this section."

Conformity to the law in construction and "appurtenances" imports the existence of conditions preparatory to the use of the building for tenement house purposes,—conditions which relate to the adaptation and equipment of the house for the purposes of a tenement house, and necessary to render it in all respects legally suitable for such purposes. Evidently these are things which should be done by the owner, and the duty of compliance with the order of the board of health with respect to the receptacles in question therefore rested

upon the defendant, and subjected him to a penalty for a failure to comply therewith.

The fact that the lease in question contained a covenant on the part of the lessees to comply with all orders of the board of health at their own expense cannot avail to relieve the lessor from a public duty with the performance of which he is charged by the statute. The case of Mayor, etc., v. Corlies, 2 Sandf. 301, is not, I think, an authority controlling the disposition of this case. There the action was brought to recover a penalty against a landlord for violating the following ordinance of the city:

"No person shall cast or lay, or suffer to run in or upon, or within three feet of any wharf, or in any lane, alley, lot or vacant place, to the southward of Fourteenth street, the contents of any sink, tub, privy or cesspool under the penalty of $10 for each offense."

The charge was that the defendant had violated the ordinance by suffering the contents of the sink on his premises on Water street to run into the adjoining lot. On the part of the defendant it was shown that at the time of the violation of the ordinance the premises in question were under lease, and were then occupied by the lessee, and it was also shown that by the terms of the lease the tenant was to make all repairs. The question to be decided by the court was, who was the person who "suffered" the contents of the privy to run into the adjoining lot? because it is obvious that by the very terms of the ordinance that person, and no other, was the one who had incurred the penalty. The court held that as the landlord was under no obligation, either at law or by contract, to make repairs, he was not the person who had violated the ordinance, and that no recovery would lie against him. In the case at bar, however, the question is, upon whom does the statute cast the duty? and if, upon the construction of the statute, that question is resolved against the owner, it seems quite clear to me that he cannot, as between himself and the health department, relieve himself from his duty by contracting with another for its performance. It follows from what has been said that the judgment below should be affirmed.